UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                  :

CARL COOKE, *pro se*,                      :

                                                  :
                             Petitioner,      :     **MEMORANDUM & ORDER**
                                                  :
                      -against-                 :     06-cv-3053 (DLI)(RER)
                                                  :
HAROLD GRAHAM, Superintendent,   :
Auburn Correctional Facility,            :
                                                  :
                              Respondent.   :

------------------------------------------------------- x
DORA L. IRIZARRY, United States District Judge:

*Pro se* petitioner Carl Cooke is currently serving a 25-year prison sentence following his conviction in New York State Supreme Court, Queens County, ("Queens County Supreme Court") for Assault in the First Degree (N.Y. Penal Law § 120.10[1]) and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[2]). Pursuant to 28 U.S.C. § 2254, he challenges the convictions by contending that: (1) he was deprived of his Speedy Trial rights under New York Criminal Procedure Law § 30.30 ("§ 30.30"); (2) he received ineffective assistance of counsel during the § 30.30 proceedings; (3) he received a cruel and unusual sentence as a result of ineffective assistance of counsel and due process violations; and (4) the state court failed to properly review his collateral motions. For the reasons set forth below, the petition is denied.

### I.    Background

    *a. The Stabbing, Arrest, and Indictment*

On December 4, 1998, petitioner, who at the time was homeless, stayed at the St. Andrew's Church in Queens ("St. Andrew's"), which offered overnight shelter for the homeless.

(Trial Transcript ("Tr.") at 590-93.) The next morning, as petitioner was getting ready to leave, he realized that he was missing his can of Lysol, which contained fifty dollars in the cap. (Tr. at 810-12.) Petitioner accused Gary Belfast, another homeless man who had stayed at St. Andrew's, of stealing the can of Lysol. (Tr. at 591, 593.) Petitioner told Belfast to empty his bags, and Belfast complied. (Tr. at 594, 633.) This confrontation escalated into a fight, which Larry James, another homeless man, broke up. (Tr. 174, 228, 276-78, 595-96, 633, 959, 961-62, 998.) After James broke up the fight, the homeless men left the church to board a bus to Grand Central Neighborhood, a daytime facility for homeless men. By the time Belfast stepped out of St. Andrews, all of the homeless men at St. Andrew's had already boarded the bus except for Belfast, James, Patrick Dasilva, and petitioner. (Tr. at 279.) The prosecution and petitioner offered different accounts of what occurred next.

According to the prosecution, Belfast had left St. Andrew's after the initial altercation with petitioner, expecting that he and petitioner would continue their fight outside. (Tr. at 634, 691.) Once outside, petitioner approached Belfast appearing as if he was about to throw a punch, but instead pulled out a knife and stabbed Belfast underneath his left arm. (Tr. at 653-555, 965, 987.) DaSilva, who was nearby, heard Belfast say "he stabbed me." (Tr. at 281, 314.) After the stabbing, Belfast tried to flee, but petitioner pursued him with the knife. (Tr. at 967-68, 1003.) At that point, James came to Belfast's defense, telling petitioner to leave Belfast alone or else petitioner would have to fight James. (Tr. at 967-69.) As a result, petitioner retreated and tried to board the bus taking the homeless men back to Grand Central Neighborhood. (Tr. at 607, 969.) James then flagged down a cab, which took Belfast to Flushing Hospital. (Tr. at 74-76, 83-85, 612.)

Petitioner denies ever carrying a knife or stabbing Belfast. (Tr. at 820-21.) According to petitioner, as he was heading to the bus, he heard Belfast and James telling the bus driver that they were going to "fuck [petitioner] up." (Tr. at 817.) As petitioner approached the bus, the driver closed the bus door before he could board. (Tr. at 818.) Belfast and James, who were nearby, then attacked petitioner. Belfast grabbed petitioner while James tried to stab him with a knife. (*Id.*) Before James could stab him, petitioner broke free of Belfast, ran back to St. Andrew's, and called the police. (Tr. at 818-20.)

At trial, Robert Jones, the driver of the bus, testified that he heard a commotion while he was waiting for the homeless men to board the bus. (Tr. at 95-97.) Immediately after the commotion, petitioner tried to board the bus while holding a bloody ten-to-twelve-inch butcher knife with a black handle. (Tr. at 96-97, 104.) Seeing this, Jones immediately yelled for someone to call the police. (Tr. at 98.) He then shut the bus door before petitioner could board and drove away. (*Id.*)

While petitioner was trying to board the bus, DaSilva told Maria Quintanal, a volunteer at St. Andrew's, to call the police because Belfast had been stabbed, and she did. (Tr. at 282, 316.) That same day, Police Officer James Delargy responded to the call from St. Andrew's. There, he spoke with Quintanal and then arrested petitioner and brought him to Flushing Hospital, where Belfast identified petitioner as his assailant. (Tr. at 376-78, 393-96, 614.)

Petitioner was arraigned on a felony complaint in the Queens County Criminal Court. At the arraignment, petitioner waived his right to a speedy trial and continued to waive the right until January 25, 1999, when he was released because the prosecution had been unable to locate Belfast to testify before the Grand Jury. On April 12, 1999, after several adjournments, the prosecution moved to dismiss the case because it had still been unable to locate Belfast. The

3

court granted the motion without prejudice. In early July 1999, Belfast contacted the Queens District Attorney's Office after discovering that petitioner had not been incarcerated for stabbing him. Having located Belfast, the prosecution presented its case to the Grand Jury, and, on July 13, 1999, the Grand Jury indicted petitioner for Attempted Murder in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Fourth Degree. On July 27, 1999, petitioner was arraigned on these charges.

    *b. § 30.30 Hearing*

On May 10, 2000, petitioner moved to dismiss his indictment pursuant to § 30.30, arguing that the prosecution had exceeded the statutory six-month period to bring the case to trial. Specifically, petitioner contended, *inter alia*, that the period between January 25, 1999 and July 12, 1999 should be charged to the prosecution. According to petitioner, the prosecution did not diligently attempt to locate Belfast during that period, and therefore, that 78-day delay was not excusable or justified. The prosecution countered that the delay should be excused because it was caused, in part, by the injuries that petitioner inflicted on Belfast, which prohibited him from testifying. The prosecution further claimed that, after Belfast recovered, the prosecution was unable to locate him, despite its diligent efforts, because he was homeless and not residing within the New York City Shelter System.

On July 13, 2000, the Queens County Supreme Court began a § 30.30 hearing. On July 24, 2000, the second day of the hearing, the parties entered into a stipulation in which the prosecution would be charged with more than 90 days but less than 180 days. (Stipulation Proceedings ("SP") at 10-11.) To make sure that petitioner understood the stipulation, the court asked petitioner:

> So that there's no issue, the parties have agreed as follows: they agree that the hearing be waived and that the parties stipulate that the chargeable time as of right

4

now exceeds ninety days, but is less than 180 days and that the defendant being incarcerated is therefore to be released pursuant to 30.30 2(a). If there are future delays, the defendant will have the right to move for another 30.30. Do you understand everything?

(SP at 10.) Petitioner answered: "I understand everything you said." (SP at 11.) Petitioner then assured the court that he agreed to the stipulation "freely and . . . [had not] been coerced by anybody." (*Id*.) As a result of this stipulation, petitioner was released that same day. (SP at 14.) On July 28, 2000, in accordance with the stipulation that less than 180 chargeable days had transpired, the court dismissed petitioner's motion to dismiss the indictment on the ground that he was denied his right to a speedy trial.

> c. *The Trial, Petitioner's Motion under § 330.30 of the New York Criminal Procedure Law , Petitioner's Renewed § 30.30 Motion, and Sentencing*

Petitioner's trial began on September 25, 2000. On October 13, 2000, the jury acquitted petitioner of Attempted Murder in the Second Degree but returned guilty verdicts for Assault in the First Degree and Criminal Possession of a Weapon in the Fourth Degree. (Tr. at 1212.) Subsequently, on December 18, 2000, petitioner attempted to submit a *pro se* motion to set aside his conviction pursuant to New York Criminal Procedure Law § 330.30 ("§ 330.30"). (Dec. 18, 2000 Transcript at 3-4.) The court refused to accept it because petitioner was represented by counsel at the time, but explained that petitioner should submit the motion through his counsel. (*Id*.) There is no indication that petitioner ever attempted to do so.

On January 19, 2001, petitioner, represented by new counsel, attempted to reopen his § 30.30 hearing by arguing that his § 30.30 stipulation was coerced given that his immediate release was conditioned on him entering into the stipulation. Petitioner also alleged that the prosecution withheld key information regarding the whereabouts of Belfast during the relevant period, and had petitioner been aware of such information, he would not have entered into the

stipulation. Finally, petitioner argued that a stipulation to waive Speedy Trial rights was contrary to public policy. At a hearing on March 2, 2001, the court rejected all of these arguments, finding that petitioner's waiver was voluntary, intelligent, and not contrary to public policy. (March 2, 2001 Transcript at 5.) The court also found that the prosecution did not act in bad faith. (*Id.*) The court then sentenced petitioner to concurrent prison terms of 25 years for the assault conviction and one year for the possession conviction. (March 2, 2001 Transcript at 19.)

### d. *Petitioner's Direct Appeal*

In February 2003, petitioner, through counsel, appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department, arguing, *inter alia*, that he was denied a speedy trial pursuant to § 30.30. In August 2003, petitioner filed a supplemental *pro se* brief raising six more claims. First, he argued that the trial court erred by allowing the parties to enter into the stipulation during the middle of his § 30.30 hearing. Second, petitioner argued that the prosecutor committed misconduct by: (1) violating the unsworn witness rule at petitioner's speedy trial hearing; (2) entering into the stipulation in the middle of his speedy trial hearing; and (3) claiming that it had attempted to locate Belfast in the New York City Shelter System. Third, petitioner argued that there was insufficient evidence to sustain his conviction for Assault in the First Degree. Fourth, petitioner claimed that the trial court erred by refusing to accept his *pro se* § 330.30 motion because he was represented by counsel. Fifth, petitioner argued that his trial attorney was ineffective because he: (1) failed to contact a potential defense witness; (2) allegedly misled petitioner about the speedy trial stipulation; (3) failed to tell petitioner about the stipulation; and (4) entered into the stipulation. Sixth, petitioner claimed that his sentence was excessive.

On April 19, 2004, the Appellate Division affirmed petitioner's conviction. *See People v. Cooke*, 6 A.D.3d 625 (2d Dep't 2004). It held that petitioner "knowingly, voluntarily and intelligently stipulated on the record that fewer than 180 days of delay were chargeable to the prosecution." *Id*. Therefore, relying on § 30.30[1][a], the court concluded that petitioner's "claim that he was deprived of his statutory right to a speedy trial is abandoned." *Id*. The court also held that all of petitioner's other claims "are without merit." *Id*. On June 21, 2004, the New York State Court of Appeals ("Court of Appeals") denied petitioner's application for leave to appeal the Appellate Division's decision. *People v. Cooke*, 3 N.Y.3d 638 (2004).

    *e. Petitioner's Motion under § 440.10 of the New York Criminal Procedure Law*

While his direct appeal was pending, on October 23, 2003, petitioner filed a motion with the Queens County Supreme Court to vacate his conviction under § 440.10 of the New York Criminal Procedure Law ("§ 440.10"). (April 15, 2009 Letter by Harold Graham, Attachment 2 at 1.) In that motion, petitioner rehashed claims that he had already raised in his direct appeal— namely, that his § 30.30 stipulation was illegal and improper. (April 15, 2009 Letter by Harold Graham, Attachment 2 at 2-12.) The court denied the motion on June 8, 2004. (April 15, 2009 Letter by Harold Graham, Attachment 2 at 26-27.) The court found that petitioner was barred from bringing the claims in a § 440.10 motion because petitioner could have or did raise the issues presented in his direct appeal. (*Id*.) On June 30, 2004, petitioner moved the Appellate Division for leave to appeal the decision, and on June 3, 2005, the Appellate Division denied the motion. Petitioner sought leave to appeal this decision to the Court of Appeals, and, on July 20, 2005, the court denied the application. Undeterred, petitioner asked the Court to Appeals to reconsider its decision. On October 27, 2005, the court denied the request.

7

*f. Petitioner's Motion under § 440.20 of the New York Criminal Procedure Law*

On July 12, 2004, petitioner filed a motion in the Queens County Supreme Court to set aside his sentence pursuant to § 440.20 of the New York Criminal Procedure Law ("§ 440.20"). In this motion, he again raised complaints about his § 30.30 stipulation, ineffective assistance of counsel, and sentence. The court denied the motion on August 16, 2004, reasoning that

> It is clear to this Court that the issues presented within the context of this CPL§440.20 motion are nothing more than a rehash of issues previously determined. CPL§ 440.20 explicitly states that "[A]t any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." After this Court's inspection of the defendant's moving papers, it is abundantly clear that there is nothing new or novel being raised or contended. Here, under the guise of CPL§440.20, the defendant does nothing more than revisit issues raised before, and rejected by, the Appellate Division, Second Department (*People v. Cooke*, 6 AD2d 625) and by this Court in its denial of his CPL§440.10 motion.

(April 15, 2009 Letter by Harold Graham, Attachment 4 at 16.) On August 30, 2004, petitioner sought leave to appeal in the Appellate Division, and, on June 3, 2005, the Appellate Division denied the motion. Petitioner sought leave to appeal this decision to the Court of Appeals, and, on July 20, 2005, the Court of Appeals denied the application. He then filed this petition on June 6, 2006.

## II. Discussion

### a. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id*. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the state court's application must have been "objectively unreasonable." *Id*. at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). When a petitioner presents the district court with a "mixed petition," including both exhausted and unexhausted issues, the court can offer the petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims." *Id*. at 122 (citation omitted). "Alternatively, a district court may also dismiss the petition with a judgment on the merits." *Id*. (citation omitted);

9

*see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

> State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim. Moreover, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.

*McKethan*, 292 F.3d at 122 (citations and internal quotation marks omitted).

District courts cannot review a state prisoner's federal claims that are barred by an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."). On the other hand, if the state court holds that a claim is either unpreserved for appellate review or without merit, the claim is deemed preserved and therefore subject to habeas review. *Fama*, 235 F.3d at 810-811.

Because petitioner is proceeding *pro se*, the court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). The court will interpret the petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

        b. *Speedy Trial Rights under § 30.30*

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citation omitted). Petitioner's assertion that he was deprived of his right to a speedy trial is based on § 30.30, a New York statutory provision. As such, the claim is not cognizable on federal habeas review. *See People ex rel. Wesley v. Riordan*, 05-CV-3958 (DGT), 2005 WL 2148959, at *2 (E.D.N.Y. Sept. 7, 2005) ("Therefore, a claim based on CPL § 30.30 does not raise a federal constitutional claim upon which federal habeas relief may be granted.") (citing *Singh v. Fischer*, 03-CV-4128 (JG), 2004 WL 2999106, at *4 n.4 (E.D.N.Y. Dec. 29, 2004) ("Singh's claim that the state court erred in its decision regarding his speedy trial rights under New York state law is not cognizable on [federal] habeas review."); *Wilson v. Goord*, 00-CV-4849 (LTS), 2004 WL 226149, at *4 (S.D.N.Y. Feb. 6, 2004) ("[E]ven if Petitioner's statutory speedy trial right was violated, Petitioner has failed to raise a constitutional claim that is cognizable on federal habeas corpus review.")).

        c. *Ineffective Assistance of § 30.30 Counsel*

Petitioner contends that the counsel who represented him at the July 2000 § 30.30 hearing was constitutionally ineffective for entering into the stipulation in which the parties agreed that the chargeable time to the prosecution was more than 90 days but less than 180 days. Because the Appellate Division denied this claim on the merits, the claim is subject to habeas review.

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To prevail under *Strickland*, a petitioner must show that his counsel's

representation "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. The *Strickland* Court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court must "determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . ." *Id.* at 690.

In order to succeed on a claim for ineffective assistance of counsel on a federal habeas petition, petitioner must show that the state's "adjudication of the claim . . . resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In a recent decision, *Knowles v. Mirzayance*, 556 U.S. ___, 2009 WL 746274 (2009), the Supreme Court explained that such an unreasonable application of *Strickland* may occur in two ways. First, a state court violates clearly established federal law regarding ineffective assistance of counsel if the state court declines to follow a specific legal rule that is "directly on point" and has been "squarely addressed" by the Supreme Court. *Knowles*, 2009 WL 746275, at *7-8 (citation omitted). That did not occur here. Second, if the state court has not violated a specific legal rule that is directly on point and has been squarely addressed by the Supreme Court, habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland* . . . ." *Id*. at *7. With respect to this second analysis, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was

unreasonable—a substantially higher threshold." *Id.* at *8 (citation and internal quotation marks omitted). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id*. (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")). Here, petitioner's claim cannot survive a *de novo Strickland* analysis let alone the deferential review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard.

The parties entered into the stipulation after the first day of the § 30.30 hearing. (SP at 10-11.) At that point, it was far from certain that petitioner would prevail: the prosecution had offered persuasive evidence to exclude 78 days from the 238 days that petitioner alleged should have been charged to the prosecution. Specifically, the prosecution offered testimony demonstrating that it was diligent in trying to locate Belfast during the 78-day period at issue, but was unable to because he was homeless and had not returned to the New York City Shelter System. (July 13, 2000 Transcript at 23-26, 34-36.) Additionally, the prosecution offered testimony indicating that Belfast was too ill to have testified during a substantial portion of the 78-day period as a result of the stabbing. (July 13, 2000 Transcript at 29-33, 43.) Petitioner's counsel did not rebut these assertions in any meaningful way except to suggest that the prosecution should have been able to locate petitioner despite the fact that he never re-entered the New York City Shelter System during the period in question. (July 13, 2000 Transcript at 56-57.) The stipulation offered two immediate benefits: (1) the prosecution would concede to 90 chargeable days; and (2) the petitioner's immediate release. Furthermore, under the stipulation, petitioner could renew his § 30.30 challenge if there were further unexcused delays by the

prosecution. Given the distinct possibility that the court would exclude 78 days from the chargeable time (thus leaving at most 160 chargeable days, assuming that the prosecution was unsuccessful in excluding other time) and the immediate benefits that the stipulation conferred, counsel's decision to enter into the stipulation did not fall outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, the state court's denial of petitioner's claim for ineffective assistance of counsel was not objectively unreasonable under the deferential standard that applies to the court's review of this *Strickland* claim.

### d. Excessive Sentence

Petitioner argues that his 25-year sentence of incarceration was excessive because it violated due process, constituted cruel and unusual punishment, and was the result of ineffective assistance of counsel. As an initial matter, petitioner did not raise these constitutional challenges to his sentence in his state court proceedings. *(See* Appellant's *Pro Se* Supplemental Brief, *People v. Cooke*, No. 2001-02511, 2003 WL 23527180, at *18 (2d Dep't Mar. 18, 2004)) As such, the claim can only be exhausted if it is clear that it is procedurally barred under state law. *See McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). Exhaustion in this sense, however, does not automatically make the claim proper for federal habeas review. The court may only review such a claim if the prisoner can demonstrate cause and prejudice for the default, or if he can demonstrate that failure to review the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing McKinney's CPL § 440.10(2)(c)). Petitioner offers no reasons, and the court

finds none, to explain why he did not raise these constitutional challenges to his sentence on direct appeal. As such, this claim is procedurally barred under New York law. Because petitioner has not shown cause for his procedural default, petitioner can only avoid the consequences of the default if he can demonstrate that he is actually innocent, which he cannot.

The fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (citation and internal quotation marks omitted). In other words, is it "more likely than not that no reasonable juror would have concluded that [the petitioner] engaged in conduct that meets the required elements of each of the charges." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003). Petitioner cannot make this showing. Here, two eyewitnesses testified that petitioner stabbed Belfast with a knife on December 5, 1998. (Tr. at 600-04, 650, 653, 655, 964-65.) Additionally, the bus driver picking up the homeless men at St. Andrew's on that day testified that shortly after hearing a commotion and yelling that morning, he saw petitioner carrying a bloody ten-to-twelve-inch butcher knife with a black handle attempting to board the bus. (Tr. at 96-100.) The only contrary evidence adduced at trial was from petitioner himself, who denied that he stabbed Belfast. In view of this evidence, the court cannot conclude that it is "more likely than not that no reasonable juror would have concluded that [the petitioner] engaged in conduct that meets the required elements of each of the charges." *Sweet*, 353 F.3d at 142. Because petitioner has not shown cause and prejudice or

actual innocence, the court is barred from reviewing these constitutional challenges to his sentence on habeas review.

Even if the court were to look past this procedural bar, petitioner nonetheless would fail because his sentence fell within the statutory range under New York law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citation omitted). Petitioner was found guilty of Assault in the First Degree, a Class B violent felony offense under § 70.02(1)(a) of the New York Penal Law. Under § 70.02(3)(a) of the New York Penal Law, the maximum sentence for a Class B violent felony is 25 years. Because petitioner's sentence is within this range, his claim for habeas relief based on excessive sentencing must be denied.

  *e. State Court Review of Collateral Motions*

Petitioner's claim that the state courts rendered ineffective or biased review of his collateral motions under §§ 330.30, 440.10, and 440.20 is not cognizable on habeas review. Although the Second Circuit has not addressed this issue, nearly all of the circuits that have considered the issue—Fifth, Seventh, Eighth, Ninth, and Tenth—have held that errors in state collateral review, standing alone, cannot form the basis for federal habeas relief. *See Guzman v. Couture*, 99 CIV 11316 (RMB)(HPB), 2003 WL 165746, at *13 (S.D.N.Y. Jan. 22, 2003) (citations omitted); *see also Corchado v. Rabideau*, 576 F. Supp. 2d 433, 443-44 (W.D.N.Y. 2008) ("As a number of district courts in this Circuits [*sic*] have observed, [a]ll the circuits that have considered the issue, except one, have held that federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.") (citations and internal quotation marks omitted).[1] Furthermore, the district court decisions within the Circuit—several of which have been affirmed by the Second Circuit—have followed this majority rule. *See*

---

[1] Only the First Circuit has adopted a contrary rule. *See Dickerson v. Walsh*, 750 F.2d 150, 152-54 (1st Cir. 1984).

16

*Corchado*, 576 F. Supp. 2d at 444 (citations omitted) (collecting cases). Here, petitioner's claim against the state courts that reviewed his collateral motions lacks any allegation that those courts violated an independent constitutional right. As such, it is not cognizable on federal habeas review. *See Guzman*, 2003 WL 165746, at *13 (citing *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief."), *cert. denied*, 519 U.S. 907 (1996)).

### III. Conclusion

For the reasons set forth above, Cooke's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      September 28, 2009

                                                      /s/
                                         DORA L. IRIZARRY
                                     United States District Judge